**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DC COMICS,**

        **Plaintiff,**

v.                                            **Case No: 6:11-cv-1600-Orl-36GJK**

**G5 BARBERS, LLC, LA VITA, INC.,**
**SUPERMANS, LLC and DARRYL**
**SHEPPARD,**

        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AND RELATED ORDERS AGAINST DEFENDANTS G5 BARBERS, LLC, LA VITA, INC., SUPERMAN'S LLC AND DARRYL SHEPPARD (Doc. No. 38)** |
| **FILED:** | **May 15, 2012** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

**I.**    **BACKGROUND.**

On September 30, 2011, DC Comics (the "Plaintiff") filed a Complaint against G5 Barbers, LLC ("G5"), doing business as Superman's Pro Barbershop, also known as D Pro Barbershop and Superman's, La Vita, Inc. ("LVI"), doing business as Superman's, also known as Superman's Pro Barbershop, Superman's LLC ("SLLC"), doing business as Superman's

Professional Grooming, and Darryl Sheppard ("Sheppard"), doing business as Superman's Pro Barbershop and Superman's Professional Grooming (collectively, the "Defendants"). Doc. No. 1. Pursuant to the Lanham Act, Plaintiff asserts federal claims of trademark infringement, false designation of origination and unfair competition, and violations of the Anticybersquatting Consumer protections Act, 15 U.S.C. § 1125(d)(1)(A). Doc. No. 1 at ¶¶ 11-40. Plaintiff also asserts state law claims for dilution and unfair competition. Doc. No. 1 at ¶¶ 41-54.

Plaintiff alleges that it is "one of the largest and most well known publishers of comic magazines in the world," and an "important aspect of [Plaintiff's] business is the licensing of distinctive trademarks and copyrights associated with [Plaintiff's] highly successful and well-known characters, including . . . 'Superman.'" Doc. No. 1 at ¶ 5A. Plaintiff contends that it "owns all right, title, and interest in and to and holds exclusive right to develop, manufacture, market, and sell products and services bearing the trademark, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating the DC Characters," including "Superman." Doc. No. 1 at ¶ 5F. Plaintiff attaches a representative sample of the trademarks it owns relating to "Superman." Doc. No. 1-2 at 2-7.

Plaintiff alleges that Defendants own and operate two barbershops named "Superman's Pro Barbershop" and "Superman's Professional Grooming" (the "Barbershops"), and website – www.supermansonline.com, which markets, advertises, and solicits business for the Barbershops. Doc. No. 1 at ¶¶ 11-12. Plaintiff maintains that in addition to the names of the businesses themselves, the Barbershops utilize outdoor signage that incorporates Plaintiff's trademarks. Doc. No. 1 at ¶¶ 11-12. Plaintiff also alleges that G5, though radio advertising in the Orlando, Florida market, also infringes upon Plaintiff's trademarks. Doc. No. 1 at ¶¶ 12.[1]

---

[1] Plaintiff attaches to the Complaint pictures of the Barbershops bearing Plaintiff's trademarks, signage advertising the Barbershops, and copies of the Defendants' webpage bearing Plaintiff's trademarks. Doc. Nos. 1-3 at 1-15, 1-4

Plaintiff alleges that it has never authorized Defendants to utilize its trademarks in their businesses, signage, or through radio and internet advertising. Doc. No. 1 at ¶ 13. Plaintiff maintains that it has made lawful demands to G5 that it stop utilizing Plaintiff's trademarks in its operation and advertising of the Barbershops, but those demands have been ignored. Doc. No. 1 at ¶¶ 14, 18. Plaintiff states that the Defendants' continued operation, advertising, and promotion of the Barbershops by utilizing Plaintiff's trademarks will likely cause confusion, mistake, and deception as to the affiliation, connection or association of the Barbershops with Plaintiff and the origin, sponsorship, or approval of Plaintiff's trademarks with Defendants' Barbershops. Doc. No. 1 at ¶ 16. Plaintiff alleges that by reason of Defendants' actions, Plaintiff has and will continue to suffer damage to its business, reputation, and goodwill and Defendants will continue to enjoy profits to which they are not entitled. Doc. No. 1 at ¶ 20. In the Complaint, Plaintiff seeks injunctive relief, an order directing Defendants to deliver for destruction any and all infringing materials, advertising, or signage containing unauthorized simulations, reproductions, counterfeits, copies or colorable imitations of Plaintiff's trademarks, damages, attorney's fees, and costs. Doc. No. 1 at 13-17.

On November 9, 2011, Plaintiff filed affidavits of service indicating that each of the Defendants was served with a summons and complaint during the period from October through December of 2011. Doc. Nos. 8-10, 16-17. On January 26, 2012, a clerk's default was entered against Sheppard for failing to plead or otherwise defend. Doc. No. 20. On May 11, 2012, the Court entered an order directing the clerk to enter default against G5, LVI, and SLLC for failure to comply with its order that they retain counsel. Doc. No. 35. *See also* Doc. No. 30 at 1-2 (ordering G5, LVI, and SLLC to retain counsel because pursuant to Local Rule 2.03(e) corporations may not proceed pro se). On May 14, 2012, the clerk entered default against G5,

at 1-4.

LVI, and SLLC. Doc. No. 37. On May 15, 2012, Plaintiff moved for a default final judgment (hereafter "Motion") seeking a permanent injunction pursuant to 15 U.S.C. § 1116, and statutory damages, jointly and severally, in the amount of $100,000.00 pursuant to 15 U.S.C. §1117(d). Doc. Nos. 39, 39-1. Thus, Plaintiff seeks judgment on their trademark infringement and anticybersquatting claims.[2]

In the Motion, Plaintiff states the following as to its request for a permanent injunction:

> Plaintiff [requests a permanent injunction] enjoining [Defendants] from further infringing the [Plaintiff's trademarks] or otherwise representing to the public that the [Barbershops] or Defendants' offer for sale of barbershop services are associated with, sponsored by or are any way connected with Plaintiff or its properties. As part of this injunction [Plaintiff] further requests that the Court enter an Order requiring Defendants to transfer the supermansonline.com domain name to [Plaintiff] within thirty (30) days of this Court requiring transfer, and further, if Defendants refuse to cooperate with this transfer, that [Plaintiff] be ordered to report the same to this Court for a further Order directing the registrar at which the supermansonline.com domain name is registered to transfer the domain name to [Plaintiff]. *See* 15 U.S.C. § 1125(d)(1)(C). Additionally, that the Defendants be Ordered to remove and turn over to the Plaintiff's counsel all signage utilizing the "S" in Shield and "Superman service marks from their buildings, windows, on cars or vehicles as "wraps", or stand alone signage associated with their business. Further, that Defendants be Ordered to report their compliance with this requirement within thirty (30) days of entry of a Permanent Injunction requiring the sign(s) removal.

Doc. No. 39 at 14-15. Thus, in addition to being required to cease doing business by utilizing Plaintiff's trademarks, Plaintiff requests that Defendants be ordered to turn over the domain name of their website to Plaintiff and, to remove or turn over all signage or related materials bearing Plaintiff's trademark to Plaintiff for destruction. *Id*. Plaintiff also requests that the Court retain jurisdiction over the case to monitor Defendants' compliance with the proposed permanent injunction. *Id*.

---

[2] In the Motion, Plaintiff does not seek an award of attorneys' fees and costs. Doc. Nos. 39, 39-1.

As to damages, Plaintiff is only requesting statutory damages pursuant to 15 U.S.C. § 1117(d), pursuant to the Anticybersquatting Act. Doc. No. 39 at 15. Pursuant to Section 1117(d), Plaintiff maintains that the Court may award statutory damages in an amount not less than $1,000.00 and not more than $100,000.00. Doc. No. 39 at 15. Plaintiff requests an award of $100,000.00, jointly and severally against the Defendants. Doc. No. 39 at 15-18.

In support of the amount requested, Plaintiff states that statutory damages under the Anticybersquatting Act are "'relatively new, [but] are akin to the statutory damages provisions of the copyright laws.'" Doc. No. 39 at 15 (quoting *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009)). Similar to copyright statutory damages, Plaintiff maintains that statutory damages under the Anticybersquatting Act are designed to discourage wrongful conduct. Doc. No. 15-16. Plaintiff argues that the domain utilized by Defendants "is nearly identical to the Plaintiff's mark even though they have no trademark or intellectual property rights in or to the mark." Doc. No. 39 at 16. Plaintiff contends that "Defendants registered and used the domain name in conjunction with their website with the clear commercial goal of diverting Internet consumers to [their] site and to market the [Barbershops]." Doc. No. 39 at 16. Plaintiff further maintains that Defendants have continued to operate the website ever after this suit was filed. Doc. No. 39 at 16 (citing *Louis Vuitton Malletier v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) ("willfulness can be inferred by the fact that a defendant continued the infringing behavior after being given notice.")).[3]

Based on the forgoing, Plaintiff argues that:

> Given Defendants' intentional behavior to trade on the goodwill [Plaintiff] has built up in the "Superman" mark over the course of

---

[3] In support of its position that Defendants continued to use the infringing domain to advertise and promote the infringing Barbershops, Plaintiff attaches the affidavit of Cindy Baker, an employee of Plaintiff's law firm, who states she personally reviewed the supermansonline.com website on November 21, 2011, and February 29, 2012, and it continued to advertise and promote the Barbershops. Doc. No. 39-3 at 6-7.

> 70 years, Plaintiff requests this Court to award statutory damages of $100,000. Such an award is well within this Court's discretion and would create an appropriate disincentive to discourage this conduct. Moreover, it is consistent with other cases dealing with similar conduct. *See Louis Vuitton*, at 585 (use of plaintiff's trademark in domain for website selling counterfeit merchandise supports award of $100,00 per mark); *Citigroup, Inc. v. Chen Bao Shui*, 611 F.Supp.2d 507, 513 (E.D. Va. 2009) ("Defendant's violative use of the domain name "citybank.org" has been established as sufficiently willful, deliberate, and performed in bad faith to merit the maximum statutory award of $100,000."); . . . *Pinehurst, Inc. v. Wick*, 256, F.Supp.2d 424, 433 (M.D. N.C. 2003) (award of $50,000 in statutory damages appropriate where defendant utilized the PINEHURST mark in multiple domain names).

Doc. No. 39 at 16-17. Thus, Plaintiff maintains that a $100,000.00 award of statutory damages is appropriate in the case based upon Defendants willful and bad faith use of the domain name utilizing Plaintiff's mark and their failure to remove the domain name after being notified of this lawsuit. *Id*. The Motion is supported by the affidavit of Cindy Baker, an employee of Plaintiff's counsel's law firm. Doc. No. 39-3 at 2-7. Plaintiff also attaches a proposed order. Doc. No. 39-1.

**II.    ANALYSIS.**

    **A.    Default Judgment.**

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a party may move for a default judgment pursuant to Rule 55(b)(2). A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987).

Defendants have admitted all well-pled allegations of the Complaint by virtue of their default. These include admitting that Plaintiff owns the "Superman" trademarks, they are used in commerce, Defendants used the "Superman" trademarks in connection with operating, advertising, and promoting the Barbershops, including through the use of the domain name supermansonline.com, and that Defendants' use is likely to cause confusion. Defendants have also admitted that they have been knowingly and intentionally using Plaintiff's trademarks for profit without permission. Doc. No. 1 at ¶¶ 17-20. As such, by virtue of their default, Defendants have not only admitted they infringed Plaintiff's trademarks, but they have done so willfully. *See All-Star Mktg. Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y 2011) (indicating that by virtue of a default, a defendant is deemed a willful infringer).

**B.     Claims for Relief.**

To prevail on a claim for trademark infringement, Plaintiff must show it has a valid mark, Defendants used the mark in commerce in connection with selling or advertising goods and Defendant's actions are likely to cause confusion. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). Plaintiff has demonstrated through the well-pled allegations in the Complaint and the attached federal trademark registrations that it owns and has priority to the "Superman" word mark and the "S" in Shield design mark, that Defendants have used the marks in connection with the sale, marketing, and offering of services at the Barbershops, as well as in connection with the domain name supermansonline.com, and that said use has likely caused consumer confusion. Doc. Nos. 1; 1-2; 1-3; 1-4; and 39-2 through 39-21. Thus, pursuant to 15 U.S.C. § 1114(a), it is recommended that the Court find that Plaintiff has pled sufficient facts supporting its claim for trademark infringement against Defendants.

As to Plaintiff's claims for false designation of origin and unfair competition, pursuant to

15 U.S.C. § 1125(a), the same set of facts which permit Plaintiff to prevail on its claims for trademark infringement also result in Plaintiff prevailing under Section 1125. *See Babbit Electronics, Inc. v. Dynascan Corporation*, 38 F.3d 1161, 1181 (11th Cir. 1994) (holding that because Section 1125(a) is broader than Section 1114, the same set of facts which allow a plaintiff to prevail on a trademark infringement claim will permit a plaintiff to recover for a false designation of origin and unfair competition claim). Accordingly, it is recommended that the Court find that Plaintiff has pled sufficient facts supporting its claim for false designation of origin and unfair competition against the Defendants.

To prevail on a claim arising under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1), Plaintiff must demonstrate that:

> (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001).

*Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed.Appx. 252, 256 (11th Cir. Oct. 2, 2006) (unpublished).[4] In this case, Plaintiff has demonstrated that its "Superman" mark is famous and entitled to protection and that the Defendants' domain name supermansonline.com is confusingly similar to Plaintiff's trademark. Doc. Nos. 1, 1-2 at 3-5. As to the third element, Section 15 U.S.C. § 1125(d)(1)(B) provides that a court may consider the following non-exclusive list of factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). Section 1125(d)(1)(B)(ii) also provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id*.

      As to the first five factors outlined above, the Court notes that Plaintiff's "Superman"

trademark has been widely famous for over seventy (70) years and Defendants have no intellectual property rights to the mark or the domain name at issue. Doc. No. 1 at ¶¶ 5A-F. Defendants have admitted that they used the domain name at issue in bad faith and intended to profit from their misconduct. Doc. No. 1 at ¶ 39. Defendants have no bona fide noncommercial or fair use of the mark in their domain name. As Plaintiff states in the Motion, Defendants' "site is purely an unauthorized commercial site intended to trade upon the goodwill built up on the Plaintiff's mark." Doc. No. 39 at 9. It requires a "quantum leap of imagination" to believe that a user of the internet accessing supermansonline.com would not associate it with Plaintiff's famous mark. *See Victoria's Cyber Secret LTD. P'Ship v. Secret Catalogue, Inc*., 161 F.Supp.2d 1339, 1347 (S.D. Fla. 2001) (finding that an internet user would likely associate the domain names at issue with Victoria's Secret, a famous trademark). Thus, it is recommended that the Court find with respect to the first five factors listed above, Plaintiff has demonstrated Defendants' bad faith intent to profit from the mark.

With respect to the sixth and seventh factors, Plaintiff acknowledges that it has no information supporting these factors, but Plaintiff argues that Defendants have utilized a proxy service to conceal their involvement with the domain name registration. Because Plaintiff has not alleged or provided evidence supporting these factors, it is recommended that the Court find that the sixth and seventh factors do not support a finding of bad faith intent to profit from Plaintiff's trademarks.

As to the eighth and ninth factors, Defendants have utilized a domain name that is confusingly similar to Plaintiff's trademark and Defendants continue to promote the infringing Barbershops on the website despite being informed of infringement. As set forth above, Plaintiff's "Superman" trademarks have been famous and widely used by Plaintiff since 1938.

Doc. No. 1 at ¶ 5B.  Plaintiff's trademarks have generated hundreds of millions of dollars in worldwide sales.  *Id*.  Accordingly, it is recommended that the Court find that the eighth and ninth factors support a finding of bad faith intent to profit from Plaintiff's trademarks.

As set forth above, Section 1125(d)(1)(B)(ii) provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).  There has been no showing of any reasonable belief that the Defendants' use of the domain name was a fair use or otherwise lawful.  Based on the forgoing, after considering all of the factors outlined in 15 U.S.C. § 1125(d)(1)(B), it is recommended that the Court find that Plaintiff has sufficiently pled and demonstrated Defendants' bad faith intent to profit from Plaintiff's trademarks.

Plaintiff requests statutory damages in the amount of $100,000.00, the maximum amount allowable under the Anticybersquatting Act.  Doc. No. 39 at 12-18.  Plaintiff is entitled to an award of statutory damages not less than $1,000.00 and not more than $100,000.00 per domain name.  15 U.S.C. § 1117(d).  The cases relied upon by Plaintiff, in its request for the maximum amount allowable under the statute, are distinguishable from the facts of the present case.  In *Luis Vuitton*, 211 F.Supp.2d at 585, the Court awarded $100,000.00 in statutory damages in part because the Defendant was profiting from the selling of counterfeit Luis Vuitton products.  *Id*.  In *Pinehurst, Inc*., 256 F.Supp.2d at 433, the court only awarded $50,000.00 in statutory damages where the defendant utilized the mark in multiple domain names.  *Id*.  In this case, Defendants used a single infringing domain name to promote barber services at the Barbershops, which while likely to confuse the public as to association, it does not rise to the level of profiting off counterfeit goods.

Other Courts have awarded the maximum in statutory damages where the defendant was utilizing a single domain name, but was also engaging in criminal fraud and concealment, none of which has been alleged here. *See Transamerica Corp. v. Moniker Online Svcs., LLC*, 2010 WL 1416979 at *4 (S.D. Fla. Apr. 7, 2010) (awarding $100,000 for the use of single domain name where there was evidence of criminal intent, fraud and concealment). Courts have also awarded $10,000.00 in statutory damages for the use of a single domain name. *See Taverna Opa Trademark Corp. v. Ismail*, 2010 WL 1838384 at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in damages for use of single domain name); *Victoria's Cyber Secret*, 161 F.Supp.2d at 1356 (awarding $10,000 for each of the four internet domain names registered). In *K.S.R. X-Ray Supplies, Inc. v. Southeastern X-Ray, Inc.*, 2010 WL 4317026 at *7 (S.D. Fla. Oct. 25, 2010), the plaintiff requested $100,000.00 in statutory damages, but the Court stated that "[g]iven that Defendants engaged in cybersquatting on a single domain name against this Plaintiff, and there is no evidence that the wrongful conduct is ongoing, the court finds an award of $10,000 in statutory damages to be more appropriate." *Id*. Based on the forgoing, it is recommended that the Court find that an award of statutory damages less than $100,000.00 is appropriate.

As of May 15, 2012, Defendants continued to engage in cybersquatting under the domain name supermansonline.com. *See* Doc. No. 39-3 at 7. Therefore, although Defendants are using a single domain name to promote the Barbershops, they are continuing to pervasively engage in cybersquatting and other acts of infringement, despite being aware of this lawsuit. Accordingly, it is recommended that the Court find Defendants' violative use of Plaintiff's trademarks in the domain name has been sufficiently established as willful, deliberate, and made in bad faith to merit a statutory award of $25,000.00.

C. **Permanent Injunction.**

Plaintiff also requests a permanent injunction. Doc. No. 39 at 12-15. 15 U.S.C. § 1116(a) permits a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable." *Id*. The Eleventh Circuit has indicated that the four factor test set forth in *Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 338 (2006), must be applied in determining whether injunctive relief is warranted. *See Axiom Worldwide, Inc.*, 522 F.3d at 1227-28. As explained in *Ebay Inc.*, 547 U.S. at 391, a plaintiff must establish the following four elements to be entitled to a permanent injunction: (1) irreparable injury; "(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *Id*.

In trademark infringement actions, injunctive relief is often appropriate because: 1) "there is no adequate remedy at law to redress infringement and [2)] infringement <u>by its nature</u> causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (citing *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)). Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id*. (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

In this case, the well-pled allegations of the Complaint establish that Plaintiff has

developed substantial goodwill among the consuming public that would be undermined if Defendants are not prohibited from operating, advertising, and promoting the Barbershops by utilizing the "Superman" trademarks, including the use of the domain name supermansonline.com. The well-pled allegations of the Complaint also establish that Defendants' actions are likely to lead to continued confusion about the origin, authenticity, and association of the Barbershops with Plaintiff's trademarks. Thus, Plaintiff has established irreparable injury and that monetary damages are inadequate to compensate for the injury. Moreover, Defendants, have not shown any injury they will suffer if enjoined from operating, advertising, and promoting the Barbershops through the utilization of Plaintiff's trademarks. While Defendants will have to change the name of the businesses and all advertising and promotions thereof, including the domain name, which undoubtedly has some expense, Plaintiff's interest in maintaining the integrity of the substantial goodwill it has built up in its "Superman" trademarks since 1938 outweighs any injury the Defendants may suffer. The public interest is served by ensuring that businesses such as the Barbershops are not operated, advertised, and promoted under such a famous mark without the permission and standards of the owner of the marks. Accordingly, it is recommended that the Court find that Plaintiff is entitled to a permanent injunction.

Section 1125(d)(1)(C) provides that "[i]n any case involving the . . . use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *Id*. In the Motion, Plaintiff requests that, as a part of the permanent injunction, the Court order Defendants to transfer the supermansonline.com domain name to Plaintiff within thirty (30) days. Doc. No. 39 at 14-15. Pursuant to Section 1125(d)(1)(C), it is recommended that the Court require Defendants to

transfer the domain name to Plaintiff within thirty (30) days.

Plaintiff has submitted a proposed permanent injunction, damages award, and final judgment. Doc. No. 39-1. With the exception of the amount of statutory damages requested, the proposed order is consistent with the undersigned's report and it is recommended that the Court issue a permanent injunction, damages award, and final judgment consistent with the proposed order.

### III.  CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **GRANT in part and DENY in part** the Motion (Doc. No. 39) and enter a default judgment against the Defendants;

2. Award Plaintiff $25,000.00 in statutory damages jointly and severally against the Defendants pursuant to 15 U.S.C. § 1117(d);

3. Enter a permanent injunction against Defendants consistent with the proposed order (Doc. No. 39-1); and

4. Retain jurisdiction over the case for sixty (60) days to ensure compliance with the permanent injunction.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 22, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy